**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JAMES E. BIRCHFIELD,

                Plaintiff,

vs.                                              Case No.  8:13-cv-258-T-EAK-MCR

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") on November 14, 2008, alleging disability beginning December 15, 2007.  (Tr. 205-14). The Social Security Administration denied this application initially and on reconsideration. (Tr. 94-102, 104-09). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on June

---

[1]    Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

20, 2011.  (Tr. 47-85).  The ALJ issued a decision on August 9, 2011, finding that Plaintiff was not disabled.  (Tr. 29-39).  Plaintiff timely requested review of the ALJ's decision and on September 20, 2011, the Appeals Council denied review, making the ALJ's decision the Commissioner's final determination.  (Tr. 1-6, 201).  Plaintiff timely filed his Complaint in the U.S. District Court for review of the Commissioner's decision.  (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since December 2007 due to post-traumatic stress disorder ("PTSD").  (Tr. 270).

### B.   Summary of Evidence Before the ALJ

Plaintiff was 61 years old at the time of the ALJ's decision.  (Tr. 51, 205).  He completed one year of college and has past relevant work experience as a marble fabricator, an appliance repair person, a pipe fitter, and a handyman.  (Tr. 53, 75-76).  Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

On June 3, 2008, Plaintiff began psychiatric treatment at the Veteran Affairs Medical Center ("VMAC") with Norman Toth, D.O.  (Tr. 404).  At that time, Plaintiff described PTSD symptoms of nightmares, flashbacks, isolating, and exaggerated startle response due to his time serving in the military.  Dr. Toth diagnosed Plaintiff with

PTSD, major depression, moderate, recurrent, cannabis dependence, and alcohol dependence in full remission.

On June 17, 2008, Plaintiff returned to Dr. Toth and described suicidal ideation, racing thoughts, and nightmares. (Tr. 393). A mental status examination revealed a depressed mood. Id. On July 1, 2008, Plaintiff stated that he was feeling better but had some persistent depression. (Tr. 392). Dr. Toth opined that Plaintiff was unable to work for at least the next 90 days. (Tr. 350). On January 13, 2009, Plaintiff stated that he had returned to work. (Tr. 389-90).

On July 13, 2009, Dr. Toth completed a Mental Status Report and diagnosed Plaintiff with chronic depression and dysthymia, ruminating thoughts with negative self-depreciation, chronic poor focus, attention, and forgetfulness, loss of train of thought, poor recent and immediate memory, variable remote memory, chronic perceptual disturbances related to PTSD. (Tr. 416-17). Dr. Toth opined that Plaintiff could perform activities of daily living, but could not work due to chronic anxiety and fear of people and situations, and an inability to deal with stress or pressures. Id.

On August 10, 2009, Linda O'Neil, Ph.D., reviewed Plaintiff's medical history and concluded he is capable of performing simple, non-productive tasks and could relate well enough for basic work interactions but he would not do well with extensive interpersonal demands. (Tr. 419-36).

On February 18, 2009, Steven Kanakis, Psy.D. evaluated Plaintiff and his findings were generally unremarkable. (Tr. 351-53). Dr. Kanakis diagnosed alcohol

dependence, moderate to severe, cannabis dependence, moderate to severe, and chronic PTSD. Dr. Kanakis opined Plaintiff was at risk for decompensation only due to his substance abuse. (Tr. 353).

The next treatment record available in the transcript is dated July 7, 2010. (Tr. 453). At that time, Plaintiff stated that he had several jobs but had been terminated due to his inability to focus. Id. On September 9, 2010, Dr. Toth completed a Psychiatric Impairment Questionnaire and opined Plaintiff was incapable of handling even low stress work due to his chronic conditions and would be absent from work, on the average, more than three times a month as a result of his impairments or treatment. (Tr. 459-66).

On June 15, 2011, Timothy Foster, Ph.D. evaluated Plaintiff and noted he related well and was pleasant; he demonstrated adequate concentration skills; he was able to immediately recall a brief list of three common items after a five-minute delay; he was able to follow a simple three-step instruction; and he was able to read, write, and copy a simple design effectively. (Tr. 556-58). Dr. Foster concluded Plaintiff had severe and significant limits in his activities of daily living, his concentration, and his social functioning and could not remember and carry out work instructions. (Tr. 559). In addition, Dr. Foster completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," where he opined Plaintiff had marked or extreme limitations in several areas including the abilities to remember simple instructions or interact with supervisors and coworkers. (Tr. 560-61).

### C.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2007, the alleged onset date. (Tr. 29). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cognitive disorder, depression, PTSD, dysthymia, and generalized anxiety disorder. (Tr. 29-30). At step three, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that met or equaled any listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30-32).

The ALJ further determined that Plaintiff had the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine, repetitive tasks; ordinary and routine changes in work setting or duties; no rapid production rate, pace, or quota; and only occasional interaction with the public, coworkers, and supervisors. In addition, [Plaintiff] is able to maintain attention and concentration for no more than two hours at a time and then requires a 10-minute break.

(Tr. 32-36).

At the fourth step, the ALJ found Plaintiff was unable to perform his past relevant work. (Tr. 36-37). At the fifth step, based on the testimony of a vocational expert ("VE"), the ALJ found an individual with the same age, education, work experience, and RFC as Plaintiff could perform other jobs that exist in significant numbers in the national

---

[2] The residual functional capacity is the most an individual can do despite the combined effect of all of his credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

economy.  Specifically, Plaintiff could perform the tasks of a warehouse worker, horticultural worker, and auto detailer.  (Tr. 37-38).  Consequently, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 38).

## III.     ANALYSIS

### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues on Appeal

Plaintiff raises three issues on appeal.  First, Plaintiff contends that he is *per se* disabled under medical listing 12.04 and/or 12.06.  (Doc. 13, pp. 12-15).  Second, Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence.  (Id. at pp. 15-20).  Finally, Plaintiff argues that the ALJ failed to adequately evaluate his credibility in making his RFC determination.  (Id. at pp. 20-22).  The Court will address each of these issues.

#### 1.     Whether Plaintiff is *Per Se* Disabled Under the Medical Listings.

Plaintiff argues that he satisfies the criteria for *per se* disability under Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders).  (Doc. 13, pp. 12-15).  In response, the Commissioner contends that Plaintiff failed to show his impairments met or equaled listings 12.04 and 12.06.  (Doc. 16, pp. 4-8).

The Listing of Impairments describes conditions that prevent a person from performing any gainful activity.  See 20 C.F.R. §§ 404.1525(a), 416.925(a).  An individual who meets or equals a listed impairment is considered per se disabled without consideration of his age, education, or work experience.  See 20 C.F.R. §§ 404.1520(d), 416.920(d).  When a claimant alleges his impairment meets a listed impairment, he must present specific medical findings that satisfy all the specified criteria of the

particular listing. See 20 C.F.R. §§ 404.1525(d), 416.925(d); Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar impairment." Zebley, 493 U.S. at 531 (emphasis in original); see also 20 C.F.R. §§ 404.1526(a), 416.926(a). The evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the listings represent an automatic "screening in" based solely on medical findings rather than an individual judgment based on all the relevant factors in a claim. See Zebley, 493 U.S. at 532.

Listing 12.04 defines an affective disorder as "a disturbance of mood accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Listing 12.06 provides that for anxiety related disorders "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms" such as confronting a dreaded object. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. Both Listings state a claimant meets the required level of severity for the listings if he satisfies the criteria in both paragraphs "A" and "B" of the particular listing. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06.[3]

---

[3] A claimant can also meet Listing 12.04 if he satisfies the criteria in paragraph "C" of Listing 12.04, and meet Listing 12.06 if he satisfies the criteria in both paragraphs "A" and "C" of Listing 12.06. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. Plaintiff fails to argue that he met criteria C of either listing, and therefore has waived the issue. See United Technologies
(continued...)

Paragraph A of both listings identifies symptoms commonly associated with affective and anxiety disorders, and provides that the claimant must provide medically documented findings of one or more of the listed symptoms. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04A, 12.06A. The Commissioner concedes that Plaintiff meets the paragraph "A" criteria. (Doc. 16, p. 6).

To meet the criteria for paragraph "B," a claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04B, 12.06B. The term "marked" means more than moderate but less than extreme. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C. Here, Plaintiff challenges the ALJ's finding that he had less than marked difficulties in social functioning and maintaining concentration, persistence or pace. (Doc. 13, p. 14).

With respect to social functioning, the ALJ noted that while Plaintiff alleged he had difficulties in this area, his testimony suggested otherwise. (Tr. 31, 53, 63, 70-71). Specifically, Plaintiff testified that he was able to grocery shop and his medications helped his symptoms. (Tr. 61, 70). Plaintiff also reported that he talked and interacted with others on a weekly basis, got along well with authority figures, and had never been

---

[3](...continued)
Corp. v. Mazer, 556 F.3d 1260, 1279-80 (11th Cir. 2009) (holding appellant abandoned issue not raised in opening brief).

fired from a job due to problems getting along with others. (Tr. 280, 282). In addition, the ALJ noted Plaintiff's treatment notes contained few references to social limitations.[4] (Tr. 31).

Similarly, with respect to Plaintiff's limitations in maintaining concentration, persistence, or pace, the ALJ noted that while Plaintiff alleged difficulties in the area, he testified that he was able to pay bills, count change, and handle a savings and checking account. The ALJ also noted that the record contained little findings demonstrating difficulties in this area.[5] (Tr. 31). Furthermore, the ALJ gave great weight to the mental RFC assessment from Dr. O'Neil, who concluded that Plaintiff was capable of simple, non-productive tasks and could relate well enough for basic work interactions, although he would not do well with extensive interpersonal demands. (Tr. 35, 435). Dr. O'Neil further concluded Plaintiff had no more than moderate difficulties in maintaining social functioning and concentration, persistence or pace.[6] (Tr. 429-30).

Thus, in light of the foregoing, the undersigned concludes that substantial evidence supports the ALJ's finding that Plaintiff had no more than moderate difficulties

---

[4] Treatment notes consistently observed Plaintiff to be pleasant and cooperative. See (Tr. 378, 380, 409, 450, 452, 454, 534, 540, 548, 550, 552, 558-59, 574, 576-77, 589, 595, 601, 604-05, 609-10, 621, 624, 628, 634, 636).

[5] It was noted on several occasions that Plaintiff demonstrated intact memory, concentration, and normal thought processes. See (Tr. 352, 378, 380, 447, 450, 453, 480, 482, 535, 548, 550, 552, 574, 577, 590, 595, 602, 621, 629, 634, 636).

[6] While Plaintiff argues the opinions provided by Drs. Toth and Foster support a finding he met the listing criteria, as addressed below, the undersigned finds that the ALJ provided substantial evidence for giving their opinions little weight.

-11-

in social functioning and maintaining concentration, persistence, or pace. Accordingly, the undersigned recommends that Court find that Plaintiff failed to satisfy the criteria for *per se* disability under Listings 12.04 and 12.06.

### 2. Whether the ALJ Properly Weighed the Medical Opinion Evidence.

Plaintiff contends that the ALJ failed to properly weigh the medical opinion evidence. Specifically, Plaintiff argues the ALJ should have afforded greater weight to the opinions provided by treating source Dr. Toth and examining source Dr. Foster. (Doc. 13, pp. 15-20). In response, the Commissioner argues that the ALJ properly considered and evaluated the evidence from those sources. (Doc. 16, pp. 8-15).

The weight afforded a medical source's opinion on the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his or her opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. See 20 C.F.R. §§ 404.1527(c); 416.927(c). Generally, the opinion of a claimant's treating physician must be accorded substantial weight unless "good cause" exists for giving it less weight. See Crawford, 363 F.3d at 1159. However, the opinion of a physician, even a treating physician, may be discounted when the opinion is not well supported or is inconsistent with the record as a whole. Phillips, 357 F.3d at 1240-41; Crawford, 363 F.3d at 1159-60. The Eleventh Circuit has held that "good cause" exists for discounting a treating physician's opinion when (1) the opinion is not bolstered by the evidence; (2) the evidence supports

a contrary finding; or (3) the opinion is conclusory or inconsistent with the doctor's own medical records.  Phillips, 357 F.3d at 1241.

Here, Dr. Toth provided two medical statements where he opined Plaintiff suffered substantial limitations due to his mental condition.  (Tr. 416-17, 459-66).  In addition, Dr. Toth submitted notes, dated July 7, 2010, and December 29, 2010, in which he opined Plaintiff was "totally disabled."  (Tr. 439, 458).

The ALJ gave these opinions little weight because they were inconsistent with the medical evidence including his own treatment notes.  The ALJ observed that throughout the record Plaintiff's mental examinations were generally normal and indicated Plaintiff was able to function adequately.  (Tr. 33-35).  The ALJ also noted that while Plaintiff would experience increased symptoms, he handled those symptoms through medication and reaching out to others for advice and support.  (Tr. 34, 381, 404, 451).  As for Dr. Toth's conclusion that Plaintiff was "totally disabled," the ALJ accurately noted this conclusion is an issue reserved for the Commissioner.  See (Tr. 35); see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (The opinions on some issues, such as whether a claimant is disabled "are not medical opinions, ... but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; *i.e.* that would direct the determination or decision of disability.").

Plaintiff also challenges the weight given to the opinion of Dr. Foster, a one-time consultative examiner.  Dr. Foster examined Plaintiff on June 15, 2011 and concluded

-13-

Plaintiff had severe and significant limits in his activities of daily living, concentration, and social functioning. (Tr. 556-59). Dr. Foster also stated Plaintiff could not remember and carry out work instructions and opined Plaintiff had marked or extreme limitations in several areas including the abilities to remember simple instructions or interact with supervisors and coworkers. (Tr. 559-61).

The ALJ gave little weight to Dr. Foster's conclusions, finding them inconsistent with his own mental examination, which indicated few clinical abnormalities. (Tr. 36). For example, Dr. Foster reported Plaintiff was pleasant, performed well on a concentration test, was able to follow a three-step instruction and copy a simple design effectively, and could recall three objects after five minutes. (Tr. 558). Thus, the ALJ concluded that Dr. Foster appeared to rely heavily on Plaintiff's subjective complaints in formulating his opinion. (Tr. 36). In addition, the ALJ found that Dr. Foster's conclusions are also not consistent with the other mental examinations in the record showing Plaintiff behaved appropriately and displayed intact concentration. (Tr. 33-35, 352-53, 378, 380, 383, 447, 450, 452-53, 480-82, 535, 547-48, 550-52).

Plaintiff further argues the ALJ gave undue weight to Dr. O'Neil's opinion that Plaintiff could perform simple, routine, repetitive, low-demand, non-production tasks, and could relate well enough for basic work interactions. (Tr. 435). As noted above, the medical records consistently reported Plaintiff to have a normal appearance, neatly dressed and groomed, pleasant and cooperative, and demonstrated intact concentration and memory, and a normal or logical flow of thoughts. (Tr. 352-53, 378,

380, 383, 447, 450, 452-53, 480-82, 535, 547-48, 550-52).  Because the clinical examination findings considered and relied on by the ALJ in making his RFC finding supported Dr. O'Neil's assessment, the ALJ properly gave her opinion great weight.[7] (Tr. 35).

In sum, the undersigned concludes that the ALJ properly considered the record, properly evaluated the medical opinion evidence, and substantial evidence supports the weight accorded to the medical sources.

### 3.    Whether the ALJ's Credibility Finding is Supported by Substantial Evidence.

Plaintiff also challenges the ALJ's credibility determination.  (Doc. 13, pp. 20-22). In response, the Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff's allegations were not completely credible.  (Doc. 16, pp. 15-19).

When a claimant attempts to establish disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. 20 C.F.R. §§ 404.1529, 416.929.  If the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, then the intensity

---

[7] State agency medical and psychological consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in the record.  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(I).

and persistence of his alleged symptoms and their effect on his ability to work must be evaluated. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all the evidence, objective and subjective. 20 C.F.R. §§ 404.1529, 416.929. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence.[8] 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible "to the extent they were inconsistent with the above [RFC] assessment" (Tr. 33). As addressed above, the ALJ indicated Plaintiff's allegations of disabling symptoms were not consistent with many of the objective findings in the record. (Tr. 33-34); see 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (the ALJ can consider the objective medical evidence among other factors); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (permitting consideration of conflicts between a claimant's statements and the rest of the evidence).

---

[8] The ALJ is not required explicitly to conduct a credibility analysis, but the reasons for finding a lack of credibility must be clear enough that they are obvious to a reviewing court. See Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

In addition, the ALJ also considered evidence showing Plaintiff's mental impairments improved with treatment. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (the ALJ may consider effectiveness of medication); Dyer, 395 F.3d at 1210-11 (affirming ALJ's adverse credibility finding where doctors noted, and the plaintiff reported, that the plaintiff's condition had improved with treatment).[9]

Therefore, the undersigned concludes that the ALJ's decision demonstrates that he considered the relevant regulatory factors when evaluating Plaintiff's credibility, explained his conclusion adequately, and his credibility determination is supported by substantial evidence. (Tr. 33-35); see Jamison v. Bowen, 814 F.2d 585, 588-89 (11th Cir. 1987) (finding an ALJ not required to use particular formulations or phrases as long as a court can determine the ALJ considered Plaintiff's entire medical condition under proper regulatory and statutory requirements).[10]

## IV. CONCLUSION

For the reasons stated herein, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards. Accordingly, it is respectfully

---

[9] The ALJ noted that Plaintiff reported in July 2008, that he was feeling better and in February 2009, that his depressive symptoms were "well-controlled." (Tr. 34, 392, 638).

[10] Relying on a non-binding Seventh Circuit case in Bjornson v. Astrue, 671 F.3d 640 (7th Cir. 2012), Plaintiff argues the ALJ applied the wrong standard to his credibility determination. (Doc. 13, p. 21). Bjornson took issue with the use of "a piece of opaque boilerplate," and rests on the premise that the language in that piece of boilerplate "implies that ability to work is determined first and is then used to determine the claimant's credibility." Bjornson, 671 F.3d at 644-45. Bjornson, however, is not binding and does not appear to have been cited in any decisions from the Eleventh Circuit Court of Appeals.

**RECOMMENDED**:

that the decision of the ALJ be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**DONE AND ENTERED** in Jacksonville, Florida this  20th  day of September, 2013.

                                                MONTE C. RICHARDSON
                                    UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Elizabeth A. Kovachevich
United States District Court Judge

Counsel of Record